# ORIGINAL



U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

JUN 2 8 2004

CLERK, U.S. DISTRICT COURT
by _____
Deputy

No. 3-04-CV-1213-G

**IN THE
UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

---

*MILL CREEK PRESS, INC. d/b/a ADVANCED
ART and TUESDAY MORNING CORPORATION,*

**PLAINTIFFS,**

*v.*

*THE THOMAS KINKADE COMPANY,*

**DEFENDANT.**

---

## MOTION TO DISMISS AND BRIEF IN SUPPORT

---

Robert R. Gibbons
Texas Bar No. 07845100
Jeffrey S. Lowenstein
Texas Bar No. 24007574

**BELL NUNNALLY & MARTIN LLP**
3232 McKinney Avenue, Suite 1400
Dallas, Texas 75204-2429
Telephone: (214) 740-1400
Telecopy: (214) 740-1499

**ATTORNEYS FOR DEFENDANT
THE THOMAS KINKADE COMPANY**

OF COUNSEL:

Jeffrey C. Biggs
California Bar No. 100369
Jonathan R. Goldblatt
California Bar No. 207912

**ALSCHULER GROSSMAN STEIN
& KAHAN LLP**
The Water Garden, 1620 26th Street
Fourth Floor, North Tower
Santa Monica, CA 90404-4060
Telephone: (310) 907-1000
Facsimile: (310) 907-2000

**June 28, 2004**

## TABLE OF CONTENTS

I.      INTRODUCTION ......................................................................................... 1

II.     PROCEDURAL AND FACTUAL BACKGROUND....................................... 2

III.    SUMMARY OF ARGUMENT ...................................................................... 3

IV.     FACTUAL SUMMARY ................................................................................ 4

        A.      TKC's Business And Products.......................................................... 4

        B.      TKC's Relationship With Advanced Art........................................... 5

        C.      Tuesday Morning Acquires The Artwork And Announces Its Sale ..... 6

        D.      The Events Leading To This Lawsuit ................................................ 6

        E.      The Complaints In This Case And In The California Action ............... 9

V.      ARGUMENT ............................................................................................... 10

        A.      The Court Should Dismiss Or Stay Plaintiffs' Requests For Declaratory
                Relief............................................................................................... 10

                1.      The First-Filed Rule Does Not Apply Because This Is A
                        Declaratory Judgment Action Filed In Response To TKC's
                        Ligitation Threat To Attempt To Secure A Texas Forum ......... 11

                2.      The First-Filed Rule Does Not Apply Because This Action Was
                        Filed Only Hours Before The California Action ...................... 14

                3.      The First-Filed Rule Does Not Apply Because TKC Delayed
                        Filing The California Action To Attempt To Settle The Parties'
                        Disputes Short Of Litigation.................................................. 14

                4.      The First-Filed Rule Does Not Apply Because Plaintiffs Lulled
                        TKC Into Delaying Filing The California Action Until After This
                        Action Was Filed .................................................................. 16

        B.      Advanced Art's Tortious Interference Claim Fails To State A Claim For
                Relief............................................................................................... 17

VI.     CONCLUSION............................................................................................. 19

# TABLE OF AUTHORITIES

## FEDERAL CASES

*909 Corp. v. Vill. of Bolingbrook Police Pension Fund,*
    741 F. Supp. 1290 (S.D. Tex. 1990) ........................................................................ 11, 12, 15

*Apani Southwest, Inc. v. Coca-Cola Enters., Inc.,*
    300 F.3d 620 (5th Cir. 2002) .................................................................................... 18

*Charles Schwab & Co. v. Duffy,*
    1998 U.S. Dist. LEXIS 19606 (N.D. Cal. Dec. 8, 1998) .......................................... 15

*Columbia Pictures Indus., Inc. v. Schneider,*
    435 F. Supp. 742 (S.D.N.Y. 1977) ...................................................................... 14, 15

*Days Inns Of America, Inc. v. Reno,*
    935 F. Supp. 874 (W.D. Tex. 1996) .......................................................................... 12

*First Fishery Dev't Svce., Inc. v. Lane Labs USA, Inc.,*
    1997 U.S. Dist. LEXIS 11231 (S.D. Cal. July 22, 1997) .......................................... 13

*Hanson PLC v. Metro-Goldwyn-Mayer Inc.,*
    932 F. Supp. 104 (S.D.N.Y. 1996) ...................................................................... 14, 16

*Lone Star Milk Producers Inc. v. Dairy Farmers of America, Inc.,*
    2001 U.S. Dist. LEXIS 18716 (E.D. Tex. January 19, 2001) .................................... 18

*Lonza Inc. v. Rohm and Haas, Inc.,*
    951 F. Supp. 46 (S.D.N.Y. 1997) ............................................................................. 12

*Mission Ins. Co. v. Puritan Fashions Corp.,*
    706 F.2d 599 (5th Cir. 1983) ............................................................................... 10, 12

*Pac. Employers Ins. Co. v. M/V Capt. W.D. Cargill,*
    751 F.2d 801 (5th Cir. 1985) cert. denied 474 U.S. 909 (1985) ............................... 12

*Schmitt v. JD Edwards World Solutions Co.,*
    2001 U.S. Dist. LEXIS 7089 (N.D. Cal. May 18, 2001) ..................................... 13, 14

*Walsh v. America's Tele-Network Corp.,*
    195 F. Supp.2d 840 (E.D. Tex. 2002) ....................................................................... 17

*Z-Line Designs, Inc. v. Bell'O Int'l LLC,*
    218 F.R.D. 663 (N.D. Cal. 2003) .............................................................. 12, 14, 15, 16

## STATE CASES

*Wal-Mart Stores, Inc. v. Sturges.,*
    52 S.W.3d 711, 726 (Tex. 2001) ............................................................................... 18

## RULES

Federal Rule of Civil Procedure 12(b) ............................................................................. 4

IN THE
UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **MILL CREEK PRESS, INC. d/b/a** | § | |
| **ADVANCED ART and TUESDAY** | § | |
| **MORNING CORPORATION,** | § | |
| | § | |
| **PLAINTIFFS,** | § | |
| | § | **CIVIL ACTION NO.** |
| **v.** | § | **3-04-CV-1213-G** |
| | § | |
| **THE THOMAS KINKADE COMPANY,** | § | |
| | § | |
| **DEFENDANT.** | § | |

## MOTION TO DISMISS AND BRIEF IN SUPPORT

Defendant The Thomas Kinkade Company ("TKC") hereby moves to dismiss the Amended Complaint (the "Complaint") of Plaintiffs Mill Creek Press, Inc. d/b/a Advanced Art ("Advanced Art") and Tuesday Morning Corporation ("Tuesday Morning") (together, "Plaintiffs").

## I.   INTRODUCTION

Despite Plaintiffs' agreement not to file a lawsuit without prior notice, and at the very same time they were urging TKC not to file a lawsuit, Plaintiffs in fact were racing off – or, rather, sneaking off – to the courthouse to file this declaratory judgment lawsuit without first notifying TKC. By contrast, TKC purposely delayed filing a lawsuit so that the parties could engage in pre-litigation settlement efforts. Only after those efforts failed, and only after providing notice to Plaintiffs pursuant to their agreement, did TKC file an action in the Central District of California against Plaintiffs for copyright infringement, trademark infringement, and false advertising (the "California Action").

**MOTION TO DISMISS AND BRIEF IN SUPPORT**                                    **Page 1**

Plaintiffs' lawsuit is a classic "anticipatory filing" made in an effort to avoid facing a suit in TKC's chosen forum. Plaintiffs' sharp tactics should not be rewarded. Instead, this Court should exercise its discretion under the Declaratory Judgment Act not to hear this action. This action should be dismissed or, in the alternative, stayed pending resolution of the California Action.

## II.     PROCEDURAL AND FACTUAL BACKGROUND

TKC is the exclusive manufacturer and distributor of reproductions of the paintings of Thomas Kinkade, who is among the best-selling living artists in the world. Earlier this month, TKC learned that Tuesday Morning intended on June 8, 2004 to sell approximately 22,000 units of what appeared to be Thomas Kinkade reproductions at its stores (the "Artwork"). TKC was not aware of any of its customers buying sufficient numbers of reproductions to supply the Artwork to Tuesday Morning, and became suspicious. TKC contacted Tuesday Morning to inquire about the sale, and Tuesday Morning informed TKC that it had acquired the Artwork from Advanced Art.

TKC knew that Advanced Art had purchased Thomas Kinkade reproductions in 2001 and 2002, but it also knew that Advanced Art had sold most or all of those reproductions. TKC also knew that, in 2002 and 2003, it had contracted with Advanced Art to manufacture specific numbers of Thomas Kinkade reproductions for sale to two specific customers, but not Tuesday Morning. Therefore, it appeared that Advanced Arts had manufactured the reproductions it sold to Tuesday Morning without authority.

TKC warned that, unless Tuesday Morning could provide some evidence of the authenticity of the reproductions it was about to sell, TKC would file suit and seek a temporary restraining order in the U.S. District Court for the Central District of California, in Los Angeles on June 4, 2004 – two business days before Tuesday Morning's intended sale. During their

efforts to resolve the matter informally, TKC and Tuesday Morning agreed that neither would file suit without first notifying the other.

TKC, Tuesday Morning, and Advanced Art had a series of conversations, including throughout the day on June 4, 2004, in what TKC believed was an effort to resolve their dispute short of litigation. However, what TKC did not know was that early in the morning of June 4, at the same time Tuesday Morning was writing to TKC to urge it not to file suit and at the same time Plaintiffs were participating in a telephone conference with TKC during which the parties discussed attempting to resolve this dispute without filing suit, Plaintiffs were filing this declaratory judgment action, seeking a ruling that they had not infringed TKC's rights. Plaintiffs did not inform TKC of the filing until after it became clear that Plaintiffs would not be able to show that the Artwork was authentic and TKC notified Plaintiffs that it would be filing its lawsuit later that afternoon.

Plaintiffs' Complaint seeks a declaration that they did not violate TKC's Copyright or Trademark rights or violate any federal, state, or common law advertising laws when Advanced Art sold what it claims are authentic reproductions of the original artwork of Thomas Kinkade (the "Artwork") to Tuesday Morning, or when Tuesday Morning sold the Artwork to the public. Advanced Art also alleges that TKC tortiously interfered with Advanced Art's contract and business relations with Tuesday Morning by challenging the authenticity of the Artwork.

## III.   SUMMARY OF ARGUMENT

This motion is brought on two grounds. First, while the "first-filed rule" or "first-to-file rule" generally protects earlier-filed federal actions against later-filed actions in other District Courts, there are several well-recognized exceptions to that rule that apply here: This was an anticipatory filing, made for forum-shopping purposes; TKC lost the "race to the courthouse" by only a few hours and only because it delayed filing in an effort to resolve the parties' dispute;

and Plaintiffs intentionally lulled TKC into believing that there was no rush to file the California lawsuit – going so far as to urge TKC not to file at the very same time Plaintiffs were filing this suit. For these reasons, the Court should decline to exercise its discretionary jurisdiction and dismiss (or, in the alternative, stay) this declaratory judgment action in favor of the California lawsuit. (*See* § V.A., *infra*.)

Second, Advanced Art's claim for tortious interference fails to state a claim for relief. Advanced Art does not allege any breach of its contract with Tuesday Morning or any disruption of its existing or prospective business relations with Tuesday Morning. Indeed, Advanced Art fails even to identify a contract or prospective relationship with Tuesday Morning with which TKC allegedly interfered. Nor, for that matter, does Advanced Art allege the breach of any contract or disruption of any business relations with any third party. Therefore, the tortious interference claim should be dismissed pursuant to Federal Rule of Civil Procedure 12(b), for failure to state a claim against TKC for which relief can be granted. (*See* § V.B., *infra*.)

This motion is based on this Motion and Brief in Support, the accompanying Appendix of Evidence in Support,[1] all other pleadings and papers on file in this action, and any other oral or documentary argument or evidence as may be presented in connection with this motion.

## IV.   FACTUAL SUMMARY

### A.   TKC's Business And Products

TKC is a designer, manufacturer, and branded retailer of fine-art reproductions, art-based home decorative accessories, collectibles, and gift products. (App. p. 1 (Murray Decl. ¶ 2).) TKC produces and distributes high-quality reproductions of the works of Thomas Kinkade. (*Id.*

---

[1] Page references to the Appendix of Evidence in Support will be cited as: "App. p. __".

at ¶ 3.)  Mr. Kinkade is known as the "Painter of Light" and is among the best-selling living artists in the world.  (*Id.*)

Mr. Kinkade has registered with the Copyright Office the copyrights in and to reproductions of his artwork.  (App. p. 1 (Murray Decl. ¶ 3).)  Mr. Kinkade has granted to TKC an exclusive license of all rights under the Copyright Act in and to any reproductions of his artwork.  (*Id.* at ¶ 2.)  Pursuant to this license, TKC distributes reproductions of Thomas Kinkade artwork to art galleries and other retailers throughout the country.  (*Id.* at ¶¶ 2-3.)

**B.    TKC's Relationship With Advanced Art**

At various times in 2001 and 2002, Advanced Art purchased Thomas Kinkade reproductions from TKC and from others for resale to retailers, including Tuesday Morning. (App. p. 3 (Murray Decl. ¶ 9).)  According to TKC's records, Advanced Art sold most or all of the reproductions it purchased.  (*Id.*)

TKC and Advanced Art decided to expand their relationship, and in 2002 and 2003, TKC entered into a "Manufacturing Agreement" and a "Distribution Agreement" with Advanced Art. (App. pp. 1-2 (Murray Decl. ¶ 4).)  Pursuant to these agreements, TKC provided Advanced Art with transparencies or digital files of images of Thomas Kinkade artwork, from which Advanced Art was to manufacture specific numbers of reproductions to be sold to two specific customers – but not Tuesday Morning.  (*Id.*)  On January 31, 2004, the Manufacturing Agreement and the Distribution Agreement each terminated by its own terms.  (*Id.*)  Other than pursuant to the Manufacturing Agreement and the Distribution Agreement, TKC has not granted Advanced Art any right to manufacture or distribute reproductions of Thomas Kinkade artwork since 2002. (App. p. 2 (Murray Decl. ¶ 5).)

### C.      **Tuesday Morning Acquires The Artwork And Announces Its Sale**

Tuesday Morning owns and operates a chain of "closeout" retail stores.  In the Spring of 2004, Tuesday Morning acquired from Advanced Art approximately 22,000 Thomas Kinkade reproductions.  (Plaintiffs' Am. Compl. ¶ 9.)  On or about June 1, 2004, Tuesday Morning announced to the public on its Web site that it intended to begin selling the Artwork in each of its approximately 600 retail stores throughout the country.  (App. p. 2 (Murray Decl. ¶ 6).)

From TKC's records and from records provided by Advanced Art, it appears that Advanced Art had an inventory of Thomas Kinkade reproductions that it had acquired in 2001 and 2002, but that inventory was far less than the 22,000 units sold to Tuesday Morning.  (App. p. 3 (Murray Decl. ¶ 9).)  In addition, the reproductions sold to Tuesday Morning mostly or all were of Thomas Kinkade artwork of which Advanced Art had obtained transparencies or digital images. (App. p. 3 (Murray Decl. ¶ 10).)  Accordingly, Advanced Art must have used the transparencies or digital images it received from TKC in 2002 and 2003 to manufacture additional but unauthorized Thomas Kinkade reproductions (the "Artwork").  (App. p. 3 (Murray Decl. ¶ 11).)

### D.      **The Events Leading To This Lawsuit**

On June 3, 2004, TKC's Vice President and General Counsel spoke to representatives of Tuesday Morning.  (App. p. 2 (Murray Decl. ¶ 7).)  Tuesday Morning's representatives admitted that Tuesday Morning had purchased the Artwork from Advanced Art and indicated that the Artwork would be sold in Tuesday Morning's stores on June 8, 2004.  (*Id.*)  TKC informed Tuesday Morning that it believed Advanced Art could not have sufficient inventory of Thomas Kinkade reproductions from 2001 and 2002 to sell to Tuesday Morning without having

manufactured additional, unauthorized reproductions from the materials supplied to Advanced Art in 2002 and 2003. (*Id.*)

Therefore, that same day, counsel for TKC phoned and wrote to counsel for Tuesday Morning, warning it that TKC believed the Artwork was unauthorized and that sale of the Artwork would violate TKC's rights. (App. pp. 4-5, 8-11 (Goldblatt Decl. ¶¶ 2-4 & Ex. A).) TKC's counsel also indicated that if the matter could not be resolved by 9:00 a.m. Pacific time on the morning of June 4, 2004, TKC would file suit in the U.S. District Court for the Central District of California and would seek a temporary restraining order against Tuesday Morning's intended sale of the Artwork. (*Id.*)   That same day, TKC's General Counsel and Tuesday Morning's Chief Executive Officer agreed that neither of them would file any lawsuits without first notifying the other. (App. p. 2 (Murray Decl. ¶ 7).)

At approximately 9:30 a.m. Central time on June 4, 2004, TKC, Tuesday Morning, Advanced Art, and their respective counsel participated in a conference call. (App. pp. 5 (Goldblatt Decl. ¶ 6).) The parties exchanged information concerning the Artwork, and agreed to continue efforts to resolve the dispute short of litigation. (*Id.*) However, TKC made it clear that if Tuesday Morning or Advanced Art could not provide it with information sufficient to show that the Artwork was authentic, it would have to file suit by the end of that day. (*Id.*) The parties agreed to reconvene their call at 1:00 p.m. Central time. (*Id.*)

Approximately twenty minutes after the conference call began, counsel for Tuesday Morning sent a letter to TKC's counsel. (App. p. 5, 12-14 (Goldblatt Decl. ¶ 5 & Ex. B).) The letter claimed that "your client's allegations are without merit" and asked for some information. (*Id.*) The letter did not discuss the possibility that Tuesday Morning or Advanced Art intended to file any litigation, and in fact stated that "[w]e hope that your aggressive tone does not suggest

an unwillingness to seek an amicable resolution of this matter on behalf of our respective clients." (*Id.*)

Despite Tuesday Morning's purported interest in attempting settlement before filing litigation, and despite the earlier agreement not to file suit without prior notice, during the parties' 9:30 a.m. conference call, Tuesday Morning and Advanced Art filed this action. However, TKC did not know this at the time.

At approximately 11:30 a.m. Central time that same day, counsel for Tuesday Morning sent another letter to counsel for TKC, asking that counsel "confirm your agreement not to file today any litigation matter . . . involving our client Tuesday Morning Corporation." (App. pp. 5, 15-16 (Goldblatt Decl. ¶ 7 & Ex. C).)   At approximately noon Central time, TKC's counsel responded to Tuesday Morning's counsel's letter by email, indicating TKC's interest in resolving the parties' dispute short of litigation, but indicating that the impending sale of the Artwork would require that TKC file its lawsuit later that day if no resolution could be reached.  (App. pp. 5, 17 (Goldblatt Decl. ¶ 7 & Ex. D.)

The parties reconvened their call at 1:00 p.m. Central time.  (App. p. 6 (Goldblatt Decl. ¶ 8).)   They continued to exchange information and attempt to resolve the disputes between them.  (*Id.*)  At the end of the call – at approximately 2:00 p.m. Central time (noon Pacific time) – TKC indicated that it would file a lawsuit and seek a temporary restraining order at approximately 2:00 p.m. Pacific time (4:00 p.m. Central time).  (*Id.*)  Upon hearing this, counsel for Tuesday Morning claimed that Tuesday Morning and Advanced Art already had filed this action.  (*Id.*)  Although TKC asked for a copy of the complaint to prove that counsel's claim was true, Plaintiffs did not provide a copy or serve TKC until days later.  (*Id.*)

TKC filed the California Action against Tuesday Morning later that same day.  (App. pp. 6, 18-28 (Goldblatt Decl. ¶ 9 & Ex. E).)  TKC has amended its complaint to add Advanced Art as a defendant.  (App. pp. 7, 29-43 (Goldblatt Decl. ¶ 11 & Ex. F).)  Tuesday Morning's sale of the Artwork took place on June 8, 2004, and completely or substantially sold out that same day. (*Id.* at ¶ 10.)[2]

E.     <u>**The Complaints In This Case And In The California Action**</u>

The Complaint in this matter, as amended, contains almost no factual allegations, although it does allege that the reproductions Advanced Art sold to Tuesday Morning came from TKC or from a one-time customer of TKC called "Red Tag."  (Plaintiffs' Am. Compl. ¶¶ 8-9.) Plaintiffs seek declarations that they did not infringe TKC's copyrights in reproductions of Thomas Kinkade's artwork (*id.* at ¶¶ 12-18), did not infringe TKC's rights in the "PAINTER OF LIGHT" or "THOMAS KINKADE" trademarks (*id.* at ¶¶ 19-24), and did not engage in any false advertising (*id.* at ¶¶ 25-29).  Advanced Art separately alleges that TKC "interfered" with Advanced Art's "contracts and relationships with Tuesday Morning."  (*Id.* at ¶¶ 30-33.) However, Advanced Art does not allege that any contract was breached or that any business relationship was disrupted in any way.  In fact, Tuesday Morning's sale of the Artwork went forth as planned, and the Artwork sold out that same day.  (App. p. 6 (Goldblatt Decl. ¶ 10).)

The Complaint in the California Action, as amended, describes the past relationships among the parties (App. pp. 32-33 (TKC's Am. Compl. ¶¶ 13-18)) and describes the facts showing Plaintiffs' wrongdoing (*id.* at ¶¶ 19-36).  TKC asserts claims for copyright infringement (*id.* at ¶¶ 37-49), false designation of origin and false descriptions (*id.* at ¶¶ 50-53), and false advertising under both federal law (*id.* at ¶¶ 54-57) and California state law (*id.* at ¶¶ 58-60).

---

[2]   TKC also filed an application for a temporary restraining order, but withdrew that application before it was decided. (App. p. 6 (Goldblatt Decl. ¶ 9).)

TKC seeks injunctive relief, damages, Plaintiffs' profits from their infringement, and attorneys' fees and costs from Plaintiffs. (App. pp. 41-42.)

## V.    ARGUMENT

### A.    The Court Should Dismiss Or Stay Plaintiffs' Requests For Declaratory Relief

This Court is not required to decide this action: "[I]t is a matter for the district court's sound discretion whether to decide a declaratory judgment action." *Mission Ins. Co. v. Puritan Fashions Corp.*, 706 F.2d 599, 601 (5th Cir. 1983). In exercising its discretion here, the Court "may . . . take into account a wide variety of factors," *id.*, including the pendency of a parallel litigation involving the substantially similar issues and parties. *See id.* at 602.

The Declaratory Judgment Act serves valid purposes in a variety of situations. For example, before declaratory judgments were available, a party could not obtain a court's ruling regarding whether it was infringing another's intellectual property rights until such time as its adversary sued:

> [T]he owner of a patent might assert that a manufacturer was infringing the owner's monopoly, while the latter contended that his product was not an infringement or that the patent was invalid. The manufacturer was helpless, however, to secure an adjudication of the issue, but had to await suit for infringement, unless the manufacturer preferred to yield and discontinue the activity.

10B Wright, Miller & Kane, Federal Practice and Procedure: Civil 3d § 2751 (3d ed. 1998). This lawsuit does not serve any of the purposes of the Declaratory Judgment Act, however, because Plaintiffs' infringement or noninfringement can be adjudicated fully in the California Action. All the parties and all the issues here also are involved in the California Action, and there has been no claim that jurisdiction or venue is improper in California. Moreover, a jury may be confused by having the accused infringers in the position of plaintiffs, while the

infringement victim is in the position of defendant.  Therefore, the California Action should proceed and this action should be dismissed.

Plaintiffs will argue that the California Action – not this one – should be dismissed, because this lawsuit was filed a few hours before the California Action.  Plaintiffs will rely on the "first-filed rule," which generally favors the earlier-filed action when deciding which of two federal actions in different forums governing the same parties and subject matter should proceed. *See 909 Corp. v. Vill. of Bolingbrook Police Pension Fund*, 741 F. Supp. 1290, 1292 (S.D. Tex. 1990).

However, the Court should exercise its discretion <u>not to apply</u> the first-filed rule here and instead should dismiss (or, in the alternative, stay) this action in favor of the California Action. Among other reasons, this action (i) is a declaratory judgment action that was filed solely as a "forum-shopping" effort in response to TKC's indication that it would file the California Action; (ii) this action was filed only hours before the California Action; (iii) TKC did not file the California Action earlier because it was attempting to resolve this matter short of litigation; and (iv) Tuesday Morning induced TKC not to file the California Action earlier by false representations that it would not file any litigation without first notifying TKC.

### 1.  <u>The First-Filed Rule Does Not Apply Because This Is A Declaratory Judgment Action Filed In Response To TKC's Ligitation Threat To Attempt To Secure A Texas Forum</u>

There is a well-recognized exception to the first-filed rule for a declaratory judgment action that is first-filed in anticipation of another lawsuit in an attempt to secure a more favorable forum for the declaratory judgment plaintiff.  "[A] proper factor to consider in dismissing a declaratory judgment suit is whether the suit was filed in anticipation of another and therefore

was being used for the purpose of forum-shopping." *Pac. Employers Ins. Co. v. M/V Capt. W.D. Cargill*, 751 F.2d 801, 804 (5th Cir.), cert denied 474 U.S. 909 (1985).

This "anticipatory filing" exception exists to prevent defendants from abusing the Declaratory Judgment Act by rushing to their local courthouse in an effort to fend off an impending suit in another locale:

> The [Declaratory Judgment] Act was intended to provide a vehicle by which parties could obtain judicial determinations of unsettled legal positions, not a means of procedural manipulation in search of a forum perceived by a prospective defendant as more favorable.

*Lonza Inc. v. Rohm and Haas, Inc.*, 951 F. Supp. 46, 50 (S.D.N.Y. 1997) (dismissing first-filed declaratory judgment action).

Accordingly, anticipatory declaratory judgment suits filed for the purpose of forum-shopping – like this action – do not qualify for the "first-filed rule" and regularly are dismissed. *See e.g., Pac. Employers Ins. Co.*, 751 F.2d at 804; *Mission Ins. Co. v. Puritan Fashions Corp.*, 706 F.2d 599, 601-02 (5th Cir. 1983) (affirming dismissal of declaratory judgment action filed in anticipation of another suit); *Days Inns Of America, Inc. v. Reno*, 935 F. Supp. 874, 877-79 (W.D. Tex. 1996) (dismissing declaratory judgment action filed in anticipation of Department of Justice suits); *909 Corp. v. Village of Bolingbrook Police Pension Fund*, 741 F. Supp. 1290, 1292-93 (S.D. Tex. 1990) ("a declaratory claim should be dismissed if it was filed for the purpose of anticipating a trial of the same issues in a court of coordinate jurisdiction"); *Lonza Inc.*, 951 F. Supp. at 49 (dismissing a first-filed suit due to its "anticipatory and preemptive nature").

There can be no question that this action was filed in anticipation of the California Action. "A suit is anticipatory when the plaintiff filed upon receipt of specific, concrete indications that a suit by defendant was imminent." *Z-Line Designs, Inc. v. Bell'O Int'l LLC*,

218 F.R.D. 663, 665 (N.D. Cal. 2003).  TKC let Plaintiffs know by voice-mail, by letter, by email, and by telephone conversations that if the parties could not resolve their dispute, TKC would file suit in federal court in California on June 4, 2004.  (App. pp. 4-5, 8-11, 17 (Goldblatt Decl. ¶¶ 2-7 & Exs. A, D).)  In response, Plaintiffs filed suit early that day, in violation of their earlier agreement not to file suit without first notifying TKC and just hours before TKC filed the California Action.  (App. p. 6 (Goldblatt Decl. ¶¶ 8-9).)

This case is remarkably similar to *Schmitt v. JD Edwards World Solutions Co.,* 2001 U.S. Dist. LEXIS 7089 (N.D. Cal. May 18, 2001).  In *Schmitt*, plaintiff, a corporate executive, was terminated by his employer and went to work for one of the employer's competitors in violation of a non-compete agreement.  *Id.* at *1-2.  The employer notified plaintiff that it would file a breach of contract suit against him in Colorado the next day.  *Id.* at *2.  The next day, plaintiff filed a declaratory judgment suit in California, a few hours before the employer filed its suit.  *Id.* The District Court dismissed the declaratory judgment action as an anticipatory filing:

> The timing of [plaintiff's] suit indicates that he attempted to preempt the filing of the Colorado suit.  Admittedly, [plaintiff] has not chosen a forum unrelated to the dispute.  But it is apparent that a declaratory judgment suit was unnecessary.  When [plaintiff] filed suit he knew that the suit by [defendant] would be sufficient to resolve any legal uncertainty he faced.  These factors favor dismissal or a stay.

*Id.* at *7; *see also First Fishery Dev't Svce., Inc. v. Lane Labs USA, Inc.*, 1997 U.S. Dist. LEXIS 11231, at *11 (S.D. Cal. July 22, 1997) ("The swiftness with which Plaintiff reacted to Defendant's ultimatum indicates that, far from seeking to resolve uncertainty and settle legal relations . . ., Plaintiff simply wanted to wrest the choice of forum away from the allegedly aggrieved party.")

The same result is required here. Otherwise, parties will not be encouraged to try to resolve disputes informally before burdening the courts with litigation that may prove unnecessary.

### 2. The First-Filed Rule Does Not Apply Because This Action Was Filed Only Hours Before The California Action

Dismissal of a declaratory judgment action also is appropriate despite the first-filed rule where – as here – the declaratory judgment action was filed only a short time before the second-filed action. "When the second action is filed shortly after the first action, courts are less likely to give priority to the first-filed action." *Hanson PLC v. Metro-Goldwyn-Mayer Inc.*, 932 F. Supp. 104, 107 (S.D.N.Y. 1996) (dismissing first-filed action in favor of action filed one business day later); *see Z-Line Designs, Inc.*, 218 F.R.D. at 667 (dismissing declaratory judgment action in favor of action filed two days later); *Schmitt*, 2001 U.S. Dist. LEXIS 7089, at *2 (dismissing first-filed action in favor of action filed a few hours later); *Columbia Pictures Indus., Inc. v. Schneider*, 435 F. Supp. 742, 748 (S.D.N.Y. 1977) (staying first-filed action filed only six days before second-filed action).

This action was filed in the morning of June 4, 2004. The California Action was filed in the afternoon of that same day. (App. pp. 6, 18 (Goldblatt Decl. ¶ 9 & Ex. E.) This difference of just a few hours means that no priority should be granted to this action over the California Action.

### 3. The First-Filed Rule Does Not Apply Because TKC Delayed Filing The California Action To Attempt To Settle The Parties' Disputes Short Of Litigation

Another reason for dismissing a first-filed declaratory judgment action is where the defendant (like TKC in this matter) delayed in filing its suit in order to attempt to resolve the

parties' disputes short of litigation.  In staying a first-filed declaratory judgment action that was

commenced in the midst of settlement negotiations, one court noted:

> Potential plaintiffs should be encouraged to attempt settlement discussions . . . prior to filing lawsuits without fear that the defendant will be permitted to take advantage of the opportunity to institute litigation in a district of its own choosing before plaintiff files an already drafted complaint.

*Columbia Pictures Indus., Inc. v. Schneider*, 435 F. Supp. 742, 747-48 (S.D.N.Y. 1977).  Courts

consistently come to the same conclusion, dismissing or staying declaratory judgment actions

filed first because the other party waited to file litigation to explore pre-suit settlement

possibilities.  *See Z-Line Designs, Inc., supra*, 218 F.R.D. at 666 ("Denial of defendant's motion

to dismiss in this situation would discourage pre-litigation settlement discussions.  At a

minimum, such a denial would encourage parties interested in protecting their intellectual

property rights to file a complaint prior to attempting settlement."); *Charles Schwab & Co. v.

Duffy*, 1998 U.S. Dist. LEXIS 19606, at *4 (N.D. Cal. Dec. 8, 1998) (holding that where a

declaratory judgment action is filed in the midst of settlement discussions, the first-to-file rule

would thwart settlement discussions, as intellectual property holders would feel compelled to file

suit rather than communicate with an alleged infringer); *909 Corp. v. Vill. of Bolingbrook Police

Pension Fund*, 741 F. Supp. 1290, 1293 (S.D. Tex. 1990) (same).

Here, TKC delayed filing its suit until later in the day on June 4, 2004 in order to explore

settlement possibilities with Plaintiffs.  (*See* App. pp. 5-6 (Goldblatt Decl. ¶¶ 6-8).)  This delay

was encouraged by Plaintiffs.  (App. pp. 5, 12, 15 (Goldblatt Decl. ¶¶ 5-7 & Exs. B-C).)  This

Court should not penalize TKC for its efforts by applying the first-filed rule.

**4.     The First-Filed Rule Does Not Apply Because Plaintiffs Lulled TKC Into Delaying Filing The California Action Until After This Action Was Filed**

Courts also dismiss first-filed declaratory judgment actions, such as the present suit, where the plaintiff lulled the other party into not filing its competing lawsuit until the plaintiff's declaratory judgment lawsuit had been filed.  For example, in *Z-Line Designs*, the defendant sent a cease-and-desist letter to plaintiff alleging that some products plaintiff was selling infringed defendant's copyrights and trade dress rights.  *Z-Line Designs, Inc.*, 218 F.R.D. at 664.  The parties engaged in various pre-litigation settlement discussions, and agreed to a settlement deadline of July 30, 2003.  *Id.*  The parties could not settle their dispute, and defendant filed a lawsuit in the District of New Jersey.  *Id.*  Defendant then discovered that plaintiff already had filed a declaratory judgment action on July 29, 2003.  *Id.* at 665.  The Court dismissed the declaratory judgment action despite the fact that it was filed earlier, among other reasons because plaintiff misled defendant into believing that neither party would file a lawsuit until after the July 30 deadline:

> [P]laintiff's counsel accepted the . . . deadline . . . to discuss the . . . settlement with Z-Line, and created a reasonable expectation that Z-Line would explore settlement rather than litigation.  This was a misleading communication.

218 F.R.D. at 666.

Similarly, in *Hanson*, defendants sent plaintiff a cease-and-desist letter, alleging that plaintiff's television commercial infringed defendants' rights in the "James Bond" character. *Hanson PLC*, 932 F. Supp. at 105.  The parties engaged in some brief settlement discussions, and plaintiff's General Counsel told defendants that he would get back to them shortly.  *Id.* at 106.  However, before getting back to defendants, plaintiff filed a declaratory judgment suit.  *Id.*  The Court dismissed the declaratory judgment action in favor of defendants' suit, filed the next day,

among other reasons because defendants were lulled into waiting to file suit by plaintiff's representations: "[Defendants] waited to file suit in reliance upon representations made by counsel for [plaintiff]." *Id.* at 107.

Here, the parties engaged in pre-litigation settlement discussions, and agreed that neither side would file suit until first notifying the other. (App. p. 2 (Murray Decl. ¶ 7).) In reliance on this agreement, TKC delayed filing the California Action – which it earlier planned to file in the morning of June 4, 2004 – and participated in additional settlement discussions. (App. pp. 4-5 (Goldblatt Decl. ¶¶ 3-7.) Later in the day, when settlement discussions failed and TKC notified Plaintiffs that it would be filing the California Action, Plaintiffs for the first time disclosed that they already had filed this action earlier that same day. (App. p. 6 (Goldblatt Decl. ¶ 8).)

The Court should not apply the first-filed rule because to do so would reward Plaintiffs' sharp tactics.

**B.    Advanced Art's Tortious Interference Claim Fail To State A Claim For Relief**

Count IV of the Amended Complaint is a claim by Advanced Art for tortious interference with its "contracts and relationships" with Tuesday Morning. (Am. Compl. ¶¶ 30-33.) The allegations fail to state a claim for relief and should be dismissed.

In order to state a claim for relief for tortious interference with contract or existing business relations, Advanced Art must allege (1) the existence of a contract (or other business relationship), (2) willful and intentional interference, (3) the interference was a proximate cause of the damage, and (4) actual damage or loss. *See Walsh v. America's Tele-Network Corp.,* 195 F. Supp.2d 840, 849 (E.D. Tex. 2002). For tortious interference with prospective business relations, the elements are the same except (a) instead of an actual contract or business relationship, Advanced Art need only allege "a reasonable probability" of a prospective contract

or business relationship and (b) Advanced Art must allege that TKC's conduct was independently tortious or unlawful. *See Apani Southwest, Inc. v. Coca-Cola Enters, Inc.*, 300 F.3d 620, 634 (5th Cir. 2002); *Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 726 (Tex. 2001).

Advanced Art falls far short of its pleading obligations. First, other than the contract between them pursuant to which Advanced Art sold the Artwork to Tuesday Morning (Am. Compl. ¶ 9), Advanced Art does not allege the existence of any other relationship or a reasonable probability of any other relationship between them.

Second, Advanced Art does not allege that Tuesday Morning breached any contract or that their relationship (or prospective relationship) otherwise was disrupted. Advanced Art admits that its sale of the Artwork to Tuesday Morning was consummated (Am. Compl. ¶ 9) and that TKC only "attempted" to interfere with Tuesday Morning's sale of the Artwork to the public (Am. Compl. ¶ 11). *See Lone Star Milk Producers Inc. v. Dairy Farmers of America, Inc.*, 2001 U.S. Dist. LEXIS 18716, at *10-11 (E.D. Tex. January 19, 2001) (dismissing tortious interference claims where "[t]here are no allegations that . . . DFA somehow induced Milnot to breach any . . . contract."). In fact, Tuesday Morning's sale of the Artwork to the public proceeded as planned and the Artwork sold out completely or substantially in one day. (App. p. 6 (Goldblatt Decl. ¶ 10).)

Third, Advanced Art fails to allege that TKC's conduct was independently tortious or wrongful.

Fourth, Advanced Art fails to allege any damages or other injury whatsoever that it claims it suffered as a result of TKC's claimed interference.

Without these essential allegations, Advanced Art cannot possibly state a claim for relief for tortious interference. Accordingly, the tortious interference claims should be dismissed.

## VI.   CONCLUSION

For all of the above reasons, the Court should dismiss this action in full or, in the alternative, stay this action pending resolution of the California Action.  Permitting this action to proceed will only reward Plaintiffs for their deceptive conduct during settlement discussions and penalize TKC for attempting to resolve the dispute without resort to the courts.

Dated: June 28, 2004                    Respectfully submitted,

                                        BELL NUNNALLY MARTIN LLP


                                        By: _____
                                            Robert R. Gibbons
                                            Texas Bar No. 07845100
                                            Jeffrey S. Lowenstein
                                            Texas Bar No. 24007574
                                        1400 One McKinney Avenue
                                        3232 McKinney Avenue
                                        Suite 1400
                                        Dallas, Texas 75204
                                        (214) 740-1400 – Telephone
                                        (214) 740-1499 – Facsimile

OF COUNSEL

Jeffrey C. Biggs
California Bar No. 100369
Jonathan R. Goldblatt
California Bar No. 207912
ALSCHULER GROSSMAN STEIN
   & KAHAN LLP
The Water Garden, 1620 26th Street
Fourth Floor, North Tower
Santa Monica, CA  90404-4060
Telephone:  (310) 907-1000
Facsimile:  (310) 907-2000

                                        ATTORNEYS FOR DEFENDANT
                                        THE THOMAS KINKADE COMPANY

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing pleading was served by delivering the same to the persons listed below, via certified mail, return receipt requested on the 28th day of June, 2004.

**Certified Mail**
**Return Receipt Requested**

Robert M. Chiaviello, Jr.
Fulbright & Jaworski, L.L.P.
2200 Ross Avenue, Suite 2800
Dallas, Texas 75201-2784

**Certified Mail**
**Return Receipt Requested**

Lawrence J. Friedman
Friedman & Feiger, L.L.P.
5301 Spring Valley Road, Suite 200
Dallas, Texas 75254

Jeffrey S. Lowenstein

**MOTION TO DISMISS AND BRIEF IN SUPPORT**                                        **Page 20**