UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**FILED**

NOV 1 6 2004

CLERK, U.S. DISTRICT COURT
By_____
Deputy

| | | |
|---|---|---|
| MILL CREEK PRESS, INC. d/b/a ADVANCED ART and TUESDAY MORNING CORPORATION, | ) ) ) ) | CIVIL ACTION NO. |
| Plaintiffs, | ) ) | 3:04-CV-1213-G |
| VS. | ) ) | |
| THE THOMAS KINKADE COMPANY, | ) ) | |
| Defendant. | ) | |

## MEMORANDUM ORDER

Before the court is the motion of the defendant The Thomas Kinkade

Company ("TKC") to dismiss the claims of plaintiffs Mill Creek Press, Inc. d/b/a

Advanced Art ("Advanced Art") and Tuesday Morning Corporation ("Tuesday

Morning") (collectively, the "plaintiffs") because they constitute an "anticipatory

filing" involving a declaratory judgment action and because they fail to state a claim

upon which relief can be granted, or, in the alternative, to stay the case pending the

resolution of a related action in the United States District Court for the Central

District of California.  For the reasons discussed below, TKC's motion to dismiss this case is granted on both grounds.

## I. BACKGROUND

This case involves claims of copyright infringement, trademark infringement, and false advertising.  Plaintiff Advanced Art is a Texas corporation with its principal place of business in Dallas, Texas.  Advanced Art's Amended Complaint ("Plaintiffs' Amended Complaint") ¶ 1.  Plaintiff Tuesday Morning is a Delaware corporation with its principal place of business in Dallas, Texas.  *Id*. ¶ 2.  Defendant TKC is a California corporation with its principal place of business in Morgan Hill, California.  *Id*. ¶ 3.

TKC is the exclusive manufacturer and distributor of high-quality reproductions of the works of Thomas Kinkade ("Kinkade"), one of the best-selling living artists in the world.  Motion to Dismiss and Brief in Support ("TKC's Motion to Dismiss") at 2.  TKC is also a designer, manufacturer, and branded retailer of fine-art reproductions, home decorative accessories, collectibles, and gift products.  *Id*. at 4; Declaration of Robert Murray ("Murray Declaration") ¶ 2, *attached to* Appendix of Evidence in Support of Motion to Dismiss at 1.  Kinkade has registered with the Copyright Office the copyrights in and to reproductions of his original artwork.  TKC's Motion to Dismiss at 5; Murray Declaration ¶ 3.  Kinkade granted TKC an exclusive license under the Copyright Act in and to any reproductions of his artwork,

and TKC distributes reproductions of Kinkade's artwork, pursuant to this license, to galleries and retailers across the country. Murray Declaration ¶¶ 2-3.

## A. TKC's Relationship with Advanced Art

During the summer of 2001, TKC's predecessor, Media Arts, Inc. ("Media Arts"), sold a portion of its excess inventory of Kinkade lithograph reproductions (the "Kinkade Prints") to RedTag Biz, Inc. ("RedTag"). Plaintiffs' Amended Complaint ¶ 7; Declaration of Douglas Hills ("Hills Declaration") ¶ 3, *attached to* Plaintiffs' Joint Response in Opposition to Defendant's Motion to Dismiss as Exhibit A at 31. In August of 2001, RedTag approached Advanced Art about purchasing the Kinkade Prints, and Advanced Art lawfully purchased such reproductions. Plaintiffs' Amended Complaint ¶ 8; Hills Declaration ¶ 4; Murray Declaration ¶ 9. Additionally, Media Arts also sold Kinkade Prints directly to Advanced Art. Plaintiffs' Amended Complaint ¶ 8; Hills Declaration ¶ 10. Through these transactions, Advanced Art allegedly received over 70,000 Kinkade Prints from RedTag and Media Arts. Plaintiffs' Amended Complaint ¶ 8; Hills Declaration ¶ 11.

Throughout 2001 and 2002, Advanced Art continued to purchase reproductions from TKC for resale to retailers and, according to TKC's records, Advanced Art sold most or all of the reproductions it purchased. TKC's Motion to Dismiss at 5; Murray Declaration ¶ 9; *see also* Hills Declaration ¶ 12. After deciding to expand their relationship, TKC and Advanced Art entered into a Manufacturing

- 3 -

Agreement and a Distribution Agreement (collectively, the "Agreements") in 2002 and 2003.  TKC's Motion to Dismiss at 5; Murray Declaration ¶ 4.  In these agreements, TKC agreed to provide Advanced Art with transparencies or digital files of images of Kinkade's artwork.  TKC's Motion to Dismiss at 5; Murray Declaration ¶ 4.  From these files, Advanced Art agreed to manufacture a specific number of reproductions which would be sold to two specific customers -- neither of which was Tuesday Morning.  TKC's Motion to Dismiss at 5; Murray Declaration ¶ 4.  Since 2002, TKC has not authorized Advanced Art to manufacture, sell, or otherwise distribute reproductions of Kinkade artwork except as provided in the agreements.  Murray Declaration ¶ 5.

     B.  <u>Tuesday Morning's Acquisition and Scheduled Sale of the Artwork</u>

     Tuesday Morning owns and operates a chain of "closeout" retail stores throughout the country.  TKC's Motion to Dismiss at 6.  In March 2004, Tuesday Morning acquired from Advanced Art approximately 22,000 Kinkade reproductions.  *Id*.; Plaintiffs' Amended Complaint ¶ 9.  On or about June 1, 2004, Tuesday Morning publicly announced on its website that it would begin selling Kinkade artwork in each of its stores around the country.  TKC's Motion to Dismiss at 6; Murray Declaration ¶ 6; Plaintiffs' Amended Complaint ¶ 10.

     On the basis of records provided to TKC by Advanced Art, TKC determined that Advanced Art had an inventory of Kinkade reproductions that it had acquired in

- 4 -

2001 and 2002; however, that inventory was far less than the approximately 22,000 reproductions that it sold to Tuesday Morning.  TKC's Motion to Dismiss at 6. Additionally, TKC concluded that the reproductions sold to Tuesday Morning were Kinkade artwork which Advanced Art had acquired, pursuant to the Agreements, from transparencies or digital images.  *Id*.; Murray Declaration ¶ 10.  On the basis of these facts, TKC believes that Advanced Art used the transparencies or digital images it received from TKC in 2002 and 2003 to manufacture unauthorized Kinkade reproductions.  TKC's Motion to Dismiss at 6; Murray Declaration ¶ 11.

C. <u>The Events Leading Up to the Filing of the Plaintiffs' Complaint</u>

Acting on these suspicions, TKC's Vice President and General Counsel spoke with representatives of Tuesday Morning on June 3, 2004.  TKC's Motion to Dismiss at 6; Murray Declaration ¶ 7.  During these conversations, Tuesday Morning's representatives admitted that Tuesday Morning had purchased the artwork from Advanced Art; they informed TKC that Tuesday Morning would begin to sell the artwork in its stores on June 8, 2004.  TKC's Motion to Dismiss at 6; Murray Declaration ¶ 7.  Because TKC believed that these reproductions were unauthorized, TKC telephoned and wrote to Tuesday Morning's counsel that same day, warning it that the sale of the artwork would violate TKC's rights.  TKC's Motion to Dismiss at 7; Declaration of Jonathan R. Goldblatt ("Goldblatt Declaration") ¶¶ 2-4, *attached to* Appendix of Evidence in Support of Motion to Dismiss at 4; Letter from Jonathan R.

- 5 -

Goldblatt to Dana C. Jewell, dated June 3, 2004, *attached to* Appendix of Evidence in Support of Motion to Dismiss as Exhibit A ("Exhibit A") at 8; Plaintiffs' Amended Complaint ¶ 10. TKC's counsel informed Tuesday Morning that if the matter could not be resolved by 9:00 A.M. (Pacific Time) on June 4, 2004, TKC would be forced to file suit in the United States District Court for the Central District of California and seek a temporary restraining order against Tuesday Morning's scheduled sale of the artwork.  TKC's Motion to Dismiss at 7; Goldblatt Declaration ¶ 3.  Also, counsel for both TKC and Tuesday Morning apparently agreed that same day that neither of them would file suit without first notifying the other.  TKC's Motion to Dismiss at 7; Murray Declaration ¶ 7.

On June 4, 2004 at 9:30 A.M. (Central Time), TKC, Tuesday Morning, Advanced Art, and their respective counsel participated in a conference call.  TKC's Motion to Dismiss at 7; Goldblatt Declaration ¶ 6.  At this time, although the parties exchanged information concerning the artwork, TKC once again expressed to the other parties that if Tuesday Morning and Advanced Art could not provide it with credible evidence to show that the artwork was authentic, it would be forced to file suit at the end of the day.  TKC's Motion to Dismiss at 7; Goldblatt Declaration ¶ 6; Letter from Robert M. Chiaviello, Jr. to Jonathan R. Goldblatt, dated June 4, 2004, *attached to* Appendix of Evidence in Support of Motion to Dismiss as Exhibit B

("Exhibit B") at 12.  The parties ended the conference call and agreed to reconvene their call at 1:00 P.M. (Central Time).  TKC's Motion to Dismiss at 7.

While the conference call was being held, counsel for Tuesday Morning sent a letter to TKC claiming that its "client's allegations [were] without merit" and requesting specific information.  *Id*; Exhibit B, *attached to* Appendix of Evidence in Support of Motion to Dismiss at 12-13.  The letter did not mention that Tuesday Morning or Advanced Art intended to file suit but stated, on the contrary, that "[w]e hope that your aggressive tone does not suggest an unwillingness to seek an amicable resolution of this matter on behalf of our respective clients."  TKC's Motion to Dismiss 7-8; Exhibit B, *attached to* Appendix of Evidence in Support of Motion to Dismiss at 12.  During this conference call, and while Tuesday Morning was professing its interest in a settlement out of court, Tuesday Morning and Advanced Art filed this suit for declaratory judgment (the "Texas Action").  TKC's Motion to Dismiss at 8; *see generally* Declaratory Judgment Complaint ("Complaint").  Tuesday Morning and Advanced Art, however, did not -- at the time -- tell TKC that they had filed suit in this forum.

That same day at 11:30 A.M. (Central Time), counsel for Tuesday Morning sent another letter to TKC asking TKC to confirm its agreement not to file suit against Tuesday Morning.  TKC's Motion to Dismiss at 8; Goldblatt Declaration ¶ 7; Letter from Robert M. Chiaviello, Jr. to Jonathan R. Goldblatt, dated June 4, 2004,

- 7 -

*attached to* Appendix of Evidence in Support of Motion to Dismiss as Exhibit C

("Exhibit C") at 15.  TKC responded to this request around 12:00 (Central Time),

explaining that it had an interest in resolving the dispute short of litigation, but the

impending sale of the artwork would require TKC to file suit by the end of the day if

a resolution could not be reached.  TKC's Motion to Dismiss at 8; Goldblatt

Declaration ¶ 7; Email from Jonathan R. Goldblatt to Robert M. Chiaviello, Jr, dated

June 4, 2004, *attached to* Appendix of Evidence in Support of Motion to Dismiss as

Exhibit D ("Exhibit D") at 17.  The parties reconvened the conference call at 1:00

P.M. (Central Time) and, at the end of the call an hour later, TKC informed Tuesday

Morning and Advanced Art that it would file a lawsuit and a temporary restraining

order at 4:00 P.M. (Central Time) in California.  TKC's Motion to Dismiss at 8;

Goldblatt Declaration ¶ 8.  Upon hearing TKC's intentions, counsel for Tuesday

Morning and Advanced Art informed TKC that they had already filed the Texas

Action.  TKC's Motion to Dismiss at 8; Goldblatt Declaration ¶ 8.  TKC filed suit in

the United States District Court for the Central District of California later that same

day (the "California Action").  TKC's Motion to Dismiss at 9; Goldblatt Declaration

¶ 9; TKC's Original Complaint, *attached to* Appendix of Evidence in Support of

Motion to Dismiss as Exhibit E ("Exhibit E") at 18.  Tuesday Morning eventually

sold the artwork in its stores on June 8, 2004, and the artwork completely sold out

that same day.  TKC's Motion to Dismiss at 9; Goldblatt Declaration ¶ 10.

- 8 -

D.  The Texas Action and the California Action

The amended complaint in the Texas Action seeks declarations that the plaintiffs did not infringe TKC's copyrights while reproducing the artwork, did not infringe TKC's copyrights in the "PAINTER OF LIGHT" or "THOMAS KINKADE" trademarks, and did not engage in any false advertising.  Plaintiffs' Amended Complaint ¶¶ 8-9, 12-18, 19-24, 25-29.  Additionally, Advanced Art alleges that TKC interfered with its contracts and relationships with Tuesday Morning.  *Id.* ¶¶ 30-33.

The amended complaint in the California Action alleges claims for copyright infringement, false designation of origin and false descriptions, and false advertising under federal and state law.  The Thomas Kinkade Company's First Amended Complaint ("TKC's Amended Complaint") ¶¶ 13-18, 19-36, 37-49, 50-53, 54-57, 58-60, *attached to* Appendix of Evidence in Support of Motion to Dismiss as Exhibit F at 29.  TKC seeks injunctive relief, damages, plaintiffs' profits from their infringement, and attorneys' fees and costs from the plaintiffs.  *Id.* ¶¶ 48-49 and pp. 13-14.

II.  ANALYSIS

A.  Jurisdiction over Declaratory Judgment Actions

At the essence of the instant motion to dismiss is TKC's contention that the plaintiffs, by bringing this declaratory judgment action, preempted the right of TKC, as the alleged victim of copyright infringement, trademark infringement, and false advertising, to choose its forum.  *See generally* TKC's Motion to Dismiss.  This

situation is not novel, and the case presents no unsettled questions of law. The

plaintiffs bring this case under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and

2202. The Declaratory Judgment Act provides that "any court of the United States

. . . may declare the rights and other legal relations of any interested party seeking

such declaration . . . ." 28 U.S.C. § 2201.[1] The Supreme Court has held that the Act

grants discretion to the courts rather than an absolute right to a litigant. *Wilton v.

Seven Falls Company*, 515 U.S. 277, 287-88 (1995) ("By the Declaratory Judgment

Act, Congress sought to place a remedial arrow in the district court's quiver; it

created an opportunity, rather than a duty, to grant a new form of relief to qualifying

litigants."); see also *Sherwin-Williams Company v. Holmes County*, 343 F.3d 383, 389

(5th Cir. 2003). The court may, therefore, choose to dismiss the case by not

exercising jurisdiction over it.

At this time, the issues before the court in this declaratory judgment action

have also been raised in a sister court -- the United States District Court for the

Central District of California. When substantially related cases are pending before

---

[1]     It is well settled that the Act does not expand the subject matter
jurisdiction of the federal courts. *Franchise Tax Board of the State of California v.
Construction Laborers Vacation Trust for Southern California*, 463 U.S. 1, 15-16 (1983)
(quoting *Skelly Oil Company v. Phillips Petroleum Company*, 339 U.S. 667, 671-72
(1950)); *Comstock Oil & Gas Inc. v. Alabama and Coushatta Indian Tribes of Texas*, 261
F.3d 567, 573 n.5 (5th Cir. 2001), *cert. denied*, 535 U.S. 971 (2002). Subject matter
in this case, however, is based on federal question jurisdiction. *See generally* Plaintiffs'
Amended Complaint.

two federal courts, "the court initially seized of a controversy should be the one to decide whether it will try the case." *Mann Manufacturing, Inc. v. Hortex, Inc.*, 439 F.2d 403, 407 (5th Cir. 1971). This is the so-called "first-to-file" rule. The first-to-file rule provides that once it is shown that there is "substantial overlap" between two cases, *id.* at 408, the court in which the case is first filed decides which of the two cases should proceed. *Cadle Company v. Whataburger of Alice, Inc.*, 174 F.3d 599, 605-06 (5th Cir. 1999); *Save Power Ltd. v. Syntek Finance Corporation*, 121 F.3d 947, 950 (5th Cir. 1997).

There is clearly a "substantial overlap" between this suit and the case brought by TKC in the Central District of California. In fact, the parties and the issues in the two cases are identical. Therefore, because the declaratory judgment action was filed just hours before TKC filed its case in the Central District of California, this court must determine which of the two cases should proceed. In making that decision, the Fifth Circuit has outlined three issues this court must consider: (1) whether the declaratory action is justiciable; (2) whether the court has authority to grant declaratory relief; and (3) whether the court should exercise its discretion to decide or dismiss the action. *Sherwin-Williams*, 343 F.3d at 387.

1. *Justiciability of the Action*

Although the Fifth Circuit has noted that determining justiciability in the context of suit for declaratory judgment can be challenging, *see Orix Credit Alliance,*

- 11 -

*Inc. v. Wolfe*, 212 F.3d 891, 896 (5th Cir. 2000), a case will be justiciable if an "actual controversy" exists between the parties. *Id*. at 895-96. An actual controversy exists where there is a substantial controversy of sufficient immediacy and reality between parties having adverse legal interests. *Id*. at 896 (citations omitted).

Since an action between these same parties was filed within hours of the filing of this declaratory action asserting claims of copyright infringement, trademark infringement, and false advertising, it is without question that the instant case meets the justiciability definition. This case is justiciable, as it plainly involves an actual controversy of sufficient immediacy and reality between two parties who have adverse legal interests.

### 2. *Authority of the District Court*

Once a district court concludes that a declaratory action is justiciable, the court must then determine whether it has the authority to grant declaratory relief. The second step of the analysis essentially requires a determination of whether there are competing state and federal proceedings, and whether the district court is prohibited from intruding in the state action under the Anti-Injunction Act. *Sherwin-Williams*, 343 F.3d at 388 n.1. In this case, where the declaratory judgment action is substantially similar to a parallel federal court action, this court will automatically have the authority to decide the suit if it has subject matter jurisdiction over the claim and there are no pending state court actions. *Id*. at 387-88. The second step is

- 12 -

satisfied because this court has jurisdiction over these claims and there is a related action pending in a sister federal court.  It would be redundant for the court to allow both actions to proceed, in light of the similarity of facts, parties, and law.

### 3. *Exercise of Discretion*

Once the court has concluded that the declaratory action is justiciable and that the court has the authority to grant relief, it must then determine whether to exercise its discretion to dismiss the action.  The Fifth Circuit has identified seven factors for a court to consider when making this determination:

> (1)  whether there is a pending state action in which all of the matters in controversy may be fully litigated;

> (2)  whether the plaintiff filed suit in anticipation of a lawsuit filed by the defendant;

> (3)  whether the plaintiff engaged in forum shopping in bringing the suit;

> (4)  whether possible inequities in allowing the declaratory plaintiff to gain precedence in time or to change forums exist;

> (5)  whether the federal court is a convenient forum for the parties and witnesses;

> (6)  whether retaining the lawsuit would serve the purposes of judicial economy; and

> (7)  whether the federal court is being called on to construe a state judicial decree involving the same parties and entered by the court before whom the parallel state suit between the same parties is pending.

- 13 -

*Sherwin-Williams*, 343 F.3d at 388 (quoting *St. Paul Insurance Company v. Trejo*, 39 F.3d 585, 590-91 (5th Cir. 1994)).  This list is not exhaustive, and a court may consider other factors in deciding how to exercise its discretion to decide or dismiss a declaratory judgment action.  See *id*.; *Fidelity Bank v. Mortgage Funding Corporation of America*, 855 F. Supp. 901, 903 (N.D. Tex. 1994), *aff'd*, 91 F.3d 138 (5th Cir. 1996) (table).  This court is required to analyze and balance the facts and circumstances of the instant suit against these factors, or it will be deemed to have abused its discretion.  *Vulcan Materials Company v. City of Tehuacana*, 238 F.3d 382, 390 (5th Cir. 2001); *Trejo*, 39 F.3d at 591.

    As observed by the Fifth Circuit, the so-called "*Trejo* factors" address three aspects common to all of the federal circuits' interpretation of the factors as stated by the Supreme Court in *Brillhart v. Excess Insurance Company of America*, 316 U.S. 491 (1942):  federalism -- "the proper allocation of decision-making between state and federal courts"; fairness -- "distinguish[ing] between legitimate and improper reasons for forum selection"; and efficiency  -- avoidance of "duplicative or piecemeal litigation where possible."  *Sherwin-Williams*, 343 F.3d at 390-91.  Specifically, the first and last *Trejo* factors address federalism concerns; the second, third, and fourth factors address fairness concerns; and the fifth and sixth factors address efficiency concerns.  *Id*. at 391-92.

- 14 -

### a.  Federalism and Comity

There is no pending state lawsuit related to the instant case.  Further, the declaratory judgment action before this court involves issues of federal law -- specifically, trademark and copyright infringement under 17 U.S.C. § 101, *et seq.* and 15 U.S.C. §1125(a)(1)(A), and false advertising under 15 U.S.C. § 1125(a).  *See* Plaintiffs' Amended Complaint ¶¶ 12-18, 19-24, 25-29.  As a result, "the proper allocation of decision-making between state and federal courts" is not raised by this declaratory judgment action.  See *Sherwin-Williams*, 343 F.3d at 390-91, 394, 397 (a federal declaratory judgment action raising only issues of state law that are also raised in a pending state law case should generally be dismissed, while the lack of a pending state case and the presence of federal law issues in the declaratory judgment action both weigh against dismissal).  This case, however, does contain a cause of action for tortious interference with business relations under the common law of Texas.  *See* Plaintiffs' Amended Complaint ¶¶ 30-33.  Thus, the *Trejo* factors discussing whether there is a pending state action in which all the matters in controversy may be fully litigated, and whether the federal court is being called on to construe a state judicial decree, do not weigh for or against dismissal of this action.

### b.  Fairness

TKC argues that the plaintiffs have engaged in the disapproved practice of forum shopping by filing a "classic" anticipatory suit and that the anticipatory filing

of a declaratory judgment action creates a negative incentive to negotiate prior to filing suit.  TKC's Motion to Dismiss at 2-3, 12-13; Reply Brief in Further Support of Motion to Dismiss ("TKC's Reply Brief") at 1.  On the other hand, the plaintiffs argue that the first-to-file rule should apply against the suit in the Central District of California and their suit should be allowed to go forward in this court.  Plaintiffs' Joint Response in Opposition to Defendant's Motion to Dismiss ("Plaintiffs' Response Brief") ¶ 7.

The plaintiffs are generally correct in that the first-to-file rule applies to this action.  This rule provides that once it is shown that there is substantial overlap between the two cases, the court in which the case is first filed decides which of the two cases should proceed.  *Cadle Company*, 174 F.3d at 606.  There is clearly substantial overlap between this suit and the suit in the Central District of California -- both seek exactly the same determination.

Typically, the first filed action controls which court should maintain jurisdiction.  *Texas Instruments, Inc. v. Micron Semiconductor, Inc.*, 815 F. Supp. 994, 997 (E.D. Tex. 1993).  Nevertheless, case law suggests that there is a "general policy that a party whose rights are being infringed should have the privilege of electing where to enforce its rights."  *Id*. at 997; see also *Cummins-Allison Corporation v. Glory Limited*, No. Civ.A.2-03-CV-358TJ, 2004 WL 1635534, at *4 (E.D. Tex. May 26, 2004); cf. *Genentech, Inc. v. Eli Lilly & Company*, 998 F.2d 931, 937 (Fed. Cir. 1993) ("an action

- 16 -

for declaration of noninfringement of a trademark should give way to a later-filed suit

for trademark infringement"), *cert. denied*, 510 U.S. 1140 (1994).  It is this policy

which lays the framework for whether or not the court should order a dismissal under

the *Trejo* factors.

　　　Although Fifth Circuit case law has traditionally frowned at "anticipatory"

declaratory judgment suits and on "forum shopping," the *Sherwin-Williams* court has

admonished that those precise labels -- found in the second and third factors of the

*Trejo* test -- "cannot be literally applied," because declaratory judgment actions are

inherently anticipatory in nature and because forum selection is not always improper.

*Sherwin-Williams*, 343 F.3d at 391-92.  However, an action that is of the "narrower

category of federal declaratory judgment lawsuits filed for reasons found improper or

abusive" should be dismissed in favor of the later filed non-declaratory suit.[2]  *Id.* at

---

[2]　　Examples of proper reasons for filing a declaratory judgment action
include, but are not limited to, the following:  avoiding multiple suits involving the
same issues, *Sherwin-Williams*, 343 F.3d at 398-99 (citing *Travelers Insurance Company
v. Louisiana Farm Bureau Federation*, 996 F.2d 774, 776-77, 779 (5th Cir. 1993)); and
choosing one forum over another where the difference in forum does not affect the
law that applies to the case.  *Id.* at 399 ("There is no evidence that Sherwin-Williams
brought its declaratory judgment action in search of more favorable law.").
Conversely, improper reasons for bringing a declaratory judgment action include
"subverting the real plaintiff's advantage in state court," *Travelers*, 996 F.2d at 777;
bringing a declaratory judgment action before the declaratory judgment defendants
are able to file state court actions, *Sherwin-Williams*, 343 F.3d at 397 n.7, 399; and
choosing one forum over another where the difference in forum changes the law that
applies to the case.  *Id.* at 397 (citing *Mission Insurance Company v. Puritan Fashions
Corporation*, 706 F.2d 599, 602 (5th Cir. 1983)).

- 17 -

391.

Once it appears that the plaintiffs brought suit in anticipation of another action, this court must then determine whether the plaintiffs brought the suit for proper or improper reasons. *Sherwin-Williams*, 343 F.3d at 397-99. Courts will generally not allow a party to select its preferred forum by filing an action for a declaratory judgment when it has notice that another party intends to file suit involving the same issues in a different forum. See *909 Corporation v. Village of Bolingbrook Police Pension Fund*, 741 F. Supp. 1290, 1292 (S.D. Tex. 1990). Lengthy negotiations and the tenor of the party's relationship will serve as evidence that a suit was expected to be filed. See *Granite State Insurance Company v. Tandy Corporation*, 986 F.2d 94, 96 (5th Cir. 1992), *cert. dism'd*, 507 U.S. 1026 (1993); *Mission Insurance Company v. Puritan Fashions Corporation*, 706 F.2d 599, 601-02 (5th Cir. 1983).

In this case, the declaratory judgment action was filed during a period of "settlement negotiations" in which the plaintiffs and TKC attempted to informally resolve the issues of trademark and copyright infringement. TKC's Motion to Dismiss at 3. The plaintiffs, however, make much of the fact that there was no agreement between the parties which barred either side from filing suit without notifying the other. *See* Plaintiffs' Response Brief ¶ 15; *but see* TKC's Motion to Dismiss at 7 (stating that TKC's General Counsel and Tuesday Morning's Chief Executive Officer agreed that neither would file suit without first giving the other side

- 18 -

notice); Murray Declaration ¶ 7; Exhibit C, *attached* to Appendix of Evidence in

Support of Motion to Dismiss at 15.  Nevertheless, because it is apparently true that

the plaintiffs willingly participated in settlement discussions, *see* Plaintiffs' Response

Brief ¶ 15, they undoubtedly had knowledge that TKC intended to file suit if the

issues could not be resolved outside the courtroom.  TKC's Motion to Dismiss at 7.

When TKC first learned that Tuesday Morning had purchased the artwork from

Advanced Art, TKC immediately telephoned and sent a letter to plaintiffs' counsel

informing them that if the matter could not be resolved by a specific date, TKC

would be forced to file suit in California.  *Id.*  In fact, in a morning conference call on

June 4, 2004, at which time the parties exchanged information concerning the

artwork, TKC once again made it clear that if the plaintiffs did not provide the

appropriate information to show that the artwork in question was authentic, TKC

would file suit that day.  *Id.*  Despite any interest in settling this controversy the

plaintiffs conveyed to TKC,[3] and irrespective of earlier agreements not to file suit

---

[3]      Prior to filing this suit, the plaintiffs sent correspondence to TKC which
did not suggest in the slightest that they planned to file suit.  TKC's Motion to
Dismiss at 7; Goldblatt Declaration ¶ 5; Exhibit B, *attached to* Appendix of Evidence
in Support of Motion to Dismiss at 12.  Instead, the letter merely stated the
plaintiffs' desire for an "amicable resolution" of the matter.  TKC's Motion to
Dismiss at 7; Exhibit B, *attached to* Appendix of Evidence in Support of Motion to
Dismiss at 12.  Then, after filing this action, the plaintiffs sent another letter to TKC
requesting that it confirm its agreement not to file suit against them.  Goldblatt
Declaration ¶ 7; Exhibit C, *attached to* Appendix of Evidence in Support of Motion to
Dismiss at 15.  When the parties held a second conference call on June 4, during
(continued...)

- 19 -

without prior notice, the plaintiffs filed this declaratory judgment action during the morning conference call. *Id.* at 8. Even though the plaintiffs claim that TKC made unreasonable demands on them and that TKC eventually presented an "all-or-nothing ultimatum," Plaintiffs' Response Brief ¶ 15, the swiftness with which the plaintiffs reacted to TKC's supposed ultimatum indicates that the plaintiffs simply wanted to deprive the party allegedly aggrieved of its choice of forum. Therefore, the tenor of the discussions and the correspondence between TKC and the plaintiffs suggested that litigation was TKC's next step.

Based on these facts, it is clear that the plaintiffs filed this action in anticipation of litigation and in order to gain the advantage of their preferred forum. As previously noted, even though it is certainly true that "every litigant who files a lawsuit engages in forum shopping when he chooses a place to file suit," *Texas Instruments*, 815 F. Supp. at 996, the alleged victim of the infringement is typically given the right to choose the forum where its case will be heard. Several courts in this circuit, including this court, have -- under similar circumstances -- found that allowing an alleged infringer to proceed with a declaratory judgment action divests the true plaintiff of this right. See, *e.g.*, *Kinetic Concepts, Inc. v. Connetics Corporation,*

---

³(...continued)
which they continued to exchange information in an attempt to resolve the dispute, TKC indicated that it would file suit in California. TKC's Motion to Dismiss at 8; Goldblatt Declaration ¶ 8. It was at this time that the plaintiffs *finally* informed TKC that they had already filed this suit. TKC's Motion to Dismiss at 8.

No. Civ. A. SA-04-CA0237XR, 2004 WL 2026812, at *3-4 (W.D. Tex. Sept. 8, 2004) (concluding that the declaratory judgment plaintiff filed suit for the improper reason of subverting the real plaintiff's advantage); *Capco International, Inc. v. Haas Outdoors, Inc.*, No.Civ.A. 3:03-CV-2127G, 2004 WL 792671, at *4 (N.D. Tex. Apr. 9, 2004) (holding that the declaratory plaintiff's suit was brought "not for reasons supported by the purposes of the Declaratory Judgment Act, but for the improper reason of 'subverting the real plaintiff's advantage' in a forum of [the plaintiff's] choosing") (citing *Sherwin-Williams*, 343 F.3d at 397-99) (citation omitted); *Peyman v. Optobionics Merger Corporation*, No.02-3332, 2003 WL 193443, at *3 (E.D. La. Jan. 23, 2003) ("[M]isuse of the Declaratory Judgment Act to gain a procedural advantage and preempt the forum choice of the plaintiff in the coercive action militates in favor of dismissing the declaratory judgment action.") (quoting *Great American Insurance Company v. Houston General Insurance Company*, 735 F. Supp. 581, 586 (S.D. N.Y. 1990)). In the instant case, the plaintiffs filed this declaratory judgment action to avoid TKC's chosen forum for a determination of the substantive issues.[4] In fact, the plaintiffs have essentially conceded in their responsive brief that

---

[4]     In *Capco*, this court noted that the distorted posture of the case was evident from the wording of the proposed declarations in the plaintiff's complaint, which demonstrated that the declaratory judgment action simply contained inverted elements of copyright and trademark infringement claims. *Capco International, Inc. v. Haas Outdoors, Inc.*, No. Civ. A. 3-03-CV-2127G, 2004 WL 792671, at *4 (N.D. Tex. Apr. 9, 2004). The instant case is similar. *See, e.g.*, Plaintiffs' Amended Complaint at
(continued...)

this declaratory judgment action was filed to head off TKC's anticipated action for infringement.  Plaintiffs' Response Brief ¶ 15.  The plaintiffs plainly state that it was only because of TKC's unreasonable demands and ultimatum that this suit was filed.  *Id*.  Thus, it appears that the plaintiffs were motivated to file this action by their desire to win a "race to the courthouse."

All of these factors cause the court to conclude that the plaintiffs filed this declaratory judgment action for the improper purpose of "subverting the real plaintiff's advantage" by filing this suit in a forum of their choosing, namely, the Northern District of Texas.[5]  Furthermore, application of the first-to-file rule in this

---

[4](...continued)
7 (requesting the court to find that the plaintiffs have not infringed any valid copyright of TKC; the plaintiffs did not infringe any valid trademark of TKC; and that the plaintiffs have not violated any law relating to advertising and have not violated 15 U.S.C. § 1125(a)).

[5]     In their responsive brief, the plaintiffs emphasize that the "anticipatory filing" exception does not apply in this case because the only relief sought in similar cases applying this exception has been declaratory judgment. Plaintiffs' Response Brief ¶ 13.  Nevertheless, contrary to the plaintiffs' contention, courts have considered cases where the first-filed action asserted claims both for declaratory judgment and for substantive claims.  See, *e.g.*, *Lonza Inc. v. Rohm and Haas, Inc.*, 951 F. Supp. 46, 47, 50-51 (S.D. N.Y. 1997) (finding the first-filed action anticipatory and therefore, dismissing the declaratory judgment portions of the first-filed action and transferring the unfair competition claim to the district where the second-filed action was pending); *Service Corporation International v. Loewen Group Inc.*, Civ. A. No. H-96-3269, 1996 WL 756808, at *1, 4 (S.D. Tex. Nov. 29, 1996) (dismissing the declaratory judgment action and the remaining substantive claims in favor of the second-filed action and finding that the remaining substantive claims could be adequately adjudicated as counterclaims to the second-filed suit subject to the permission of the New York forum).  As a result, the fact that the plaintiffs' amended
                                                                (continued...)

instance would penalize TKC for its attempt to make a good faith effort to resolve this dispute out of court. See *Merle Norman Cosmetics v. Martin*, 705 F. Supp. 296, 299 (E.D. La. 1988) ("Potential plaintiffs should be encouraged to attempt settlement discussions (in good faith and with dispatch) prior to filing lawsuits without fear that the defendant will be permitted to take advantage of the opportunity to institute litigation in a district of its own choosing before plaintiff files an already drafted complaint.") (quoting *Columbia Pictures Industries, Inc. v. Schneider*, 435 F. Supp. 742, 747-48 (S.D. N.Y. 1977), *aff'd*, 573 F.2d 1288 (2d Cir. 1978) (table)). Therefore, the *Trejo* factors addressing forum shopping in anticipation of litigation -- namely factors two, three, and four -- all weigh against the exercise of the court's discretion to hear this declaratory judgment action.

c. Efficiency

The remaining *Trejo* factors concentrate on what is the most convenient forum for the parties and witnesses, and on whether retaining the suit in this forum would serve the purposes of judicial efficiency.

Despite the plaintiffs' contentions concerning the burden that would be placed on them if they were forced to litigate in California, the court finds that the Texas

---

[5](...continued)
complaint contains a declaratory judgment action and a claim for tortious interference has no effect on the court's application of the "anticipatory filing" exception.

forum would be just as burdensome to TKC as the California forum would be to the

plaintiffs.[6]  Moreover, allowing the case to go forward in California and dismissing

this declaratory judgment action would allow the infringement claims to be resolved

along with California state law claims.  "[W]hen both federal actions involve the

same issues and parties, the better alternative is to allow the broader relief action to

---

[6]      While the Northern District of Texas is certainly a more convenient forum for the plaintiffs, it appears, based on the briefs, that the Central District of California is a more convenient forum for TKC and most of its witnesses.  *See* TKC's Reply Brief at 5-6.  The plaintiffs have not provided any evidence to support their contention that this forum is more convenient.  Plaintiffs' Response Brief ¶ 14 (the first-to-file rule should be applied simply because the plaintiffs "brought this action in the only forum that has jurisdiction over all the parties involved, that has any relationship to the matters at issue between the parties, and that is the most convenient forum for all parties pursuant to 28 U.S.C. § 1404(a)").  As an initial matter, the plaintiffs waived any challenge to personal jurisdiction in the California Action by filing an answer and counterclaim without challenging the jurisdiction of the Central District of California.  *See* Defendant Tuesday Morning's Answer to Plaintiff The Thomas Kinkade Company's First Amended Complaint with Counterclaims ("Tuesday Morning's Answer") at 7-11, *attached to* Supplemental Appendix of Evidence in Support of Motion to Dismiss as Exhibit D at 26; Defendant Mill Creek Press, Inc. d/b/a Advanced Art's Original Answer to Plaintiff The Thomas Kinkade Company's First Amended Complaint with Counterclaims ("Advanced Art's Answer") ¶¶ 71-88, *attached to* Supplemental Appendix of Evidence in Support of Motion to Dismiss as Exhibit E at 39; see also *Schnabel v. Lui*, 302 F.3d 1023, 1036-37, n.5 (9th Cir. 2002) ("[W]hen a party who has appeared only as a defendant, defends and files a counterclaim, objection to personal jurisdiction is waived.").  Furthermore, the Central District of California denied Tuesday Morning's motion to transfer the California Action to this district finding that there was an "insufficient showing" to transfer the case to Texas.  Reporter's Transcript of Proceedings in *The Thomas Kinkade Company v. Tuesday Morning Corporation*, CV04-4015-RSWL, Mon. July 12, 2004 ("Transcript") at 6:13-16, *attached to* Supplemental Appendix of Evidence in Support of Motion to Dismiss as Exhibit B at 22.  Additionally, neither Tuesday Morning nor Advanced Art has claimed that venue is improper in the Central District of California.  TKC's Reply Brief at 6.

- 24 -

proceed, since it certainly would address the relief sought, rather than the restricted declaratory judgment action." 10 FEDERAL PROCEDURE § 23:10 (L. Ed. 2003). Even if this court were to decide the infringement claim through declaratory judgment, the California suit would still be able to proceed on the state law claims. Giving TKC the opportunity to go forward with its suit in the Central District of California rather than issuing a declaratory judgment here, weighs in favor of both judicial economy and the convenience of both parties and witnesses by avoiding piecemeal and duplicative litigation. Therefore, the court finds that the fifth and sixth *Trejo* factors counsel against the court exercising its discretion to entertain this declaratory judgment action.

### d. Retention of Jurisdiction Not Warranted

Even though the federalism aspects of the *Trejo* test do not weigh in favor or against the court's retention of jurisdiction, the fairness and efficiency aspects both weigh against a decision of this declaratory judgment case. The court finds that the plaintiffs improperly filed their declaratory judgment in an attempt to gain the advantage of their preferred forum when TKC should have been given its choice of forum. Therefore, the court declines to exercise jurisdiction over this case.

### B. Motion to Dismiss Pursuant to Rule 12(b)(6)

#### 1. *Standard for Rule 12(b)(6) Motion to Dismiss*

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint

for "failure to state a claim upon which relief can be granted." FED. R. CIV. P.

12(b)(6). There are two primary principles that guide the court's determination of

whether dismissal under Rule 12(b)(6) should be granted. First, a motion under Rule

12(b)(6) should be granted only if it appears beyond doubt that the nonmovants

could prove no set of facts in support of their claims that would entitle them to relief.

*Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Leffall v. Dallas Independent School District,*

28 F.3d 521, 524 (5th Cir. 1994); see also *Kaiser Aluminum & Chemical Sales, Inc. v.*

*Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982) (citing WRIGHT &

MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL § 1357 at 598 (1969), for the

proposition that "the motion to dismiss for failure to state a claim is viewed with

disfavor and is rarely granted"), *cert. denied*, 459 U.S. 1105 (1983). Second, the court

must accept all well-pleaded facts as true and view them in the light most favorable to

the nonmovants. See *Capital Parks, Inc. v. Southeastern Advertising and Sales System,*

*Inc.*, 30 F.3d 627, 629 (5th Cir. 1994); *Norman v. Apache Corporation*, 19 F.3d 1017,

1021 (5th Cir. 1994); *Chrissy F. by Medley v. Mississippi Department of Public Welfare,*

925 F.2d 844, 846 (5th Cir. 1991). However, conclusory allegations and

unwarranted factual deductions will not suffice to prevent a motion to dismiss.

*United States ex rel. Willard v. Humana Health Plan of Texas Inc.*, 336 F.3d 375, 379

(5th Cir. 2003).

## 2. *Tortious Interference with Contracts & Business Relationships*

Tortious interference comprises two distinct causes of action: interference with an existing contractual relationship and interference with a prospective contract or business relationship. *Apani Southwest Inc. v. Coca-Cola Enterprises, Inc.*, 128 F. Supp. 2d 988, 1002 (N.D. Tex. 2001), *aff'd*, 300 F.3d 620 (5th Cir. 2002). In addition to the declaratory judgment actions, Advanced Art alleges that TKC has tortiously interfered with its existing and prospective business relations. Plaintiffs' Amended Complaint ¶¶ 30-33. TKC, however, contends that Advanced Art has failed to allege sufficient facts in its complaint which, if proved, establish that TKC engaged in any intentional, willful, and independently wrongful conduct that interfered with its current contract with Tuesday Morning. TKC's Motion to Dismiss at 17-18.

### a. Tortious Interference With an Existing Contract

To establish a case of wrongful interference with an existing business contract, a party must allege: "(1) a contract existed that was subject to interference; (2) the act of interference was willful and intentional; (3) such intentional act was a proximate cause of the plaintiff's damages; and (4) actual damages or loss occurred." *Walsh v. America's Tele-Network Corporation*, 195 F. Supp. 2d 840, 849 (E.D. Tex. 2002) (quoting *Schoellkopf v. Pledger*, 778 S.W.2d 897, 900 (Tex. App.--Dallas 1989, writ denied)). Although TKC argues that Advanced Art has not alleged that Tuesday

- 27 -

Morning breached any contract, Advanced Art clearly states that the "[p]laintiffs have contracts and relationships with Tuesday Morning." Plaintiffs' Amended Complaint ¶ 31. Even if it is assumed, however, that Advanced Art can establish an existing contract between itself and Tuesday Morning, Advanced Art must still allege facts showing that TKC has willfully and intentionally interfered with this contract. Advanced Art simply asserts in its complaint that TKC "acted willfully and intentionally, without just cause or excuse, in a way which interfered with such business relations," *id.*, but fails to allege any specific facts to support its claim. See also *id.* ¶ 11 (stating that TKC "attempted to interfere" with Tuesday Morning's sale of the artwork to the public). Although Advanced Art acknowledges this argument in its responsive brief, it makes no substantive response to the argument at all, nor does it provide any additional factual or legal support for its contention that TKC tortiously interfered with its existing contract with Tuesday Morning. *See* Plaintiffs' Response Brief ¶ 25. In fact, Advanced Art merely restates the language found in its amended complaint and contends it has met the pleading requirements. See *id.* These conclusory assertions will not prevent a motion to dismiss. See *Willard*, 336 F.3d at 379. Accordingly, TKC's motion to dismiss Advanced Art's tortious interference with an existing contract claim is granted.

b. <u>Tortious Interference with Prospective Business Relations</u>

To prevail on its claim for tortious interference with prospective business

relations, Advanced Art must show:  (1) a reasonable probability that the parties

would have entered into a contractual relationship; (2) an intentional and malicious

act by which the defendant prevented the relationship from occurring, with the

purpose of harming the plaintiff; (3) lack of privilege or justification of the defendant

to do the act; and (4) actual harm or damage resulting from the defendant's

interference.  *Garner v. Corpus Christi National Bank*, 944 S.W.2d 469, 477 (Tex.

App.--Corpus Christi 1997, writ denied), *cert. denied*, 525 U.S. 965 (1998).  It is not

necessary to prove that the contract would have certainly been made but for the

interference.  See *Hill v. Heritage Resources, Inc.*, 964 S.W.2d 89, 109 (Tex. App.--El

Paso 1997, writ denied).  Nevertheless, the formation of a contract must be

reasonably probable, considering all of the facts and circumstances connected to the

transaction.  See *id*.  The court concludes that Advanced Art has not adequately

stated a claim for tortious interference with prospective business relations in its

complaint.  In its complaint, Advanced Art fails to identify any prospective contracts

and the alleged interference with those contracts.  *See* Plaintiffs' Amended Complaint

¶¶ 31-32.  As a result, these allegations are insufficient to state a claim under Texas

law.

### III.  CONCLUSION

For the reasons stated above, TKC's motion to dismiss is **GRANTED**.  This

case is **DISMISSED** without prejudice to the adjudication of this dispute in the

- 29 -

related case pending in the United States District Court for the Central District of California.

       **SO ORDERED**.

November __16__, 2004.

                                      _____
                                        A. JOE FISH
                                        CHIEF JUDGE